WITOLD S. MIROSLAWSKI, Admr., Appellee, *vs.* THE FER-
GUSON & LANGE FOUNDRY COMPANY, Appellant.

*Opinion filed February 20, 1908.*

1. TRIAL—*when case should go to jury.* In an action against
the master for damages for alleged negligence resulting in a ser-
vant's death, if there is evidence tending to establish the negligence
alleged in the declaration and that the deceased was in the exer-
cise of due care for his safety, the question whether such evidence
is overcome by the defendant's evidence is for the jury, and it is
the duty of the court to refuse to direct a verdict upon such issues.

2. SAME—*what facts tend to show negligence.* Evidence tend-
ing to show that the sudden dropping of the load being carried by
the defendant's derrick was due to the slipping of a pinion on the
power shaft, so that it failed to mesh with the cog-wheel operating
the cable drums; that the slipping was due to the looseness of the
key by which the pinion was fastened to the shaft, and that such
condition had existed for a long time, making it necessary to fre-
quently drive the pinion back to its proper place on the shaft, tends
to show negligence on the part of the defendant.

3. SAME—*what tends to show that deceased was exercising due
care.* Evidence that the deceased, who was in charge of the hand-
ling of heavy loads by a derrick and who was killed by the sudden
dropping of the boom as the load was being lowered, was standing,
as was his custom, in a place where he could reach the load as it
descended and steady it to place, tends to show that he was exer-
cising due care for his safety.

APPEAL from the Branch Appellate Court for the First
District;—heard in that court on appeal from the Superior
Court of Cook county; the Hon. M. KAVANAGH, Judge,
presiding.

HORTON, BROWN & MILLER, for appellant.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was an action on the case in the superior court of
Cook county by Witold S. Miroslawski, administrator of
the estate of Jacob Rukczewski, deceased, against Ferguson
& Lange Foundry Company, a corporation, to recover dam-

ages for the death of the appellee's intestate. The declaration consisted of one original and five additional counts, and charged that appellant carelessly, negligently and improperly suffered and allowed a certain derrick, and the appliances connected therewith, to be and remain out of order and in an unsafe condition. The substantial negligence alleged consisted in permitting a certain pinion on a certain shaft to be loose and not properly fastened to the shaft, so that it was not held in place but was permitted to slip on the shaft, by reason of which the derrick gave way and permitted the load upon it to fall upon the appellee's intestate, whereby he was killed. Upon the trial a judgment was rendered against the defendant for $4000, which has been affirmed by the Appellate Court for the First District, and a further appeal has been prosecuted to this court.

It is insisted that there is no evidence to sustain the verdict either of negligence on the part of appellant or of care on the part of the deceased, and if any negligence is shown other than that of the deceased it was the negligence of the operator of the hoisting apparatus, who was under the direction of the deceased and was his fellow-servant.

The evidence tended to show that appellant operated a foundry in Chicago and the deceased was in its employ in the yard, working with a large derrick used in hoisting and transferring heavy loads of iron. The power to operate the derrick was taken from a shaft in the foundry building and the machinery for that purpose was located in a shed at the side of the main building. The man in charge of the machinery operated the derrick as directed by the deceased by signals. The boom of the derrick was about forty feet long, and the power was applied by means of two cables which ran into the shed and were coiled around drums. One of these cables was used to hoist and lower the boom and the other to lift the load without hoisting or lowering the boom. On the power shaft was a pinion which meshed into a larger cog-wheel upon a parallel shaft, to which one

of the drums was attached. The pinion was kept from turning upon its shaft by a "feather,"—that is, a piece of steel about eight inches long and three-fourths of an inch square, which fitted into two grooves of the same size as the feather, except that each was in depth but one-half the thickness of the feather, one in the shaft and the other in the core of the pinion. These grooves, called "key-ways," were opposite each other, and the feather fitting into them prevented the pinion from turning on the shaft. This pinion sometimes worked along on the feather so that it did not mesh with the larger wheel. It was originally constructed so that it could be moved along the shaft in order to change the speed of the machinery. The machinery in the shed controlled the weights, when hoisting, by means of friction levers. If pressure was not applied by the use of these levers the weight at the end of the boom would not be hoisted, or if hoisted would not be sustained, and if the pressure was relaxed the weight would drop. The accident occurred about two o'clock on the afternoon of May 19, 1904. A large, round, iron plate five or six feet in diameter, weighing about three thousand pounds, was attached to the boom of the derrick by four chains brought together over the center of the plate into a hook which was attached to the hoisting cable. A signal was given by the deceased to the operator in the shed to hoist the plate, and the deceased, by means of a tag-chain attached to the end of the boom, swung the derrick about half way around until the plate was over the spot where it was to be placed. The deceased, by signal, directed the operator to lower the plate. It started down at the usual rate of speed and in the usual manner, but after it had been lowered a part of the way, and when it was ten or fifteen feet from the ground, it suddenly dropped upon the deceased and killed him.

There was evidence tending to show that for some time prior to the accident the pinion was loose and would slip along the shaft, and had to be driven back into its place on

the shaft frequently, sometimes every week and sometimes every day, when they were lifting heavy loads. The key used was smaller than the key-way, and a piece of tin was hammered into the opening but did not prevent the pinion working on the shaft. After the accident it was found to have worked along on the shaft so far that it cleared the wheel with which it was designed to mesh, and as a consequence the drum around which the cable wound was not held or controlled by the machinery which operated it and the friction levers for holding the weight were ineffective. The cable around the drum was found uncoiled and lying around the shed.

John Stulski, who was in charge of the machinery at the time of the accident, testified as to the manner in which it happened, as follows: "When he (the deceased) gave the signal I took the lever and pulled with the brake and started to lower. The pinion slipped and the drum started to go. The drum unwound and let the cable unwind. I looked at the pinion at ten o'clock in the forenoon. I put the oil on the boxes and everything was all right. After the accident I looked at the pinion. The little pinion was against the wall this way (indicating) to the west. It come out from the big wheel,—disengaged it on the side. The big wheel is working with the drum,—is going around with the drum,—and the pinion slipped off and it stopped. The little one slipped off the big one, so that it didn't touch. The little pinion was just over at the side of the big wheel."

The appellant insists that it was the failure of John Stulski, a fellow-servant of the deceased, to apply the brake and control the weight which caused the accident, and evidence was introduced tending to show that it was impossible for the pinion to have worked over on the shaft and let the weight fall, and that the machinery and appliances were of a kind in common and general use for such work and were reasonably safe for the purpose. The plaintiff's evidence tended to support his cause of action. Whether it was met

and overcome by that of the defendant was a question depending upon a consideration of the evidence, and therefore the court properly refused to direct the jury to find a verdict for the defendant so far as the question of defendant's negligence was concerned.

This is true also of the question of the deceased's care. Stulski testified that deceased, at the time he gave the signal to lower, stood the same way he always stood. There was evidence as to his position at the time, and that he stood ready to take hold of the plate and steady it when it came down. There was evidence that he had been warned not to stand under the plate. There was evidence tending to show contradictory statements of the witness who testified most directly that the deceased stood under the plate, and on the whole evidence, as to the deceased's conduct at the time, it was a question for the jury as to whether or not he was in the exercise of ordinary care for his own safety, under the circumstances.

The substance of instruction 39 is, that if the deceased was warned of the danger of standing under the plate the jury should find the defendant not guilty. It was properly refused. Everything in instructions 35 and 38 to which appellant was entitled is contained in instructions 18 and 22 which were given. No complaint is made as to the other instructions.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*